MANDATE

N.Y.S.D. Case #
14-cv-9701(AJN)

17-1230-cv
*Zani v. Rite Aid Hdqrts. Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of February, two thousand eighteen.

PRESENT:   JOHN M. WALKER, JR.,
           GERARD E. LYNCH,
           DENNY CHIN,
                     *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 14, 2018

ROBERT ZANI, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

    *Plaintiff-Appellant*,

    v.            17-1230-cv

RITE AID HDQTRS. CORP.,

    *Defendant-Appellee*,

RITE AID CORPORATION,

    *Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MANDATE ISSUED ON 03/14/2018

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | TIMOTHY J. SOSTRIN, (Keith J. Keogh, *on the brief*), Keogh Law, LTD, Chicago, Illinois. |
| FOR DEFENDANT-APPELLEE: | KARIN DOUGAN VOGEL, (Rena Andoh, Shannon Z. Petersen, and Lisa S. Yun, *on the brief)*, Sheppard, Mullin, Richter & Hampton LLP, New York, New York. |

Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Robert Zani appeals a March 30, 2017, judgment of the district court granting summary judgment for defendant-appellee Rite Aid Headquarters Corp. ("Rite Aid") on Zani's claims that Rite Aid violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, in connection with a prerecorded, automated call Rite Aid made to Zani's cell phone in 2014 alerting him to the availability of flu shots at Rite Aid pharmacies. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's grant of summary judgment, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016) (internal quotation marks omitted).

2

The facts are largely undisputed and are summarized in the light most favorable to Zani as follows: On September 7, 2013, Zani filled a prescription at a Rite Aid-branded pharmacy in Highland Falls, New York. The pharmacy was owned and operated by Rite Aid of New York, Inc., an affiliate of Rite Aid. That day, Zani provided his cell phone number along with other personal information. Zani filled prescriptions at this Rite Aid pharmacy at least twice more in the following year. Each time Zani had a prescription filled at this location, he signed a Notice of Privacy Practices which indicated that Rite Aid "may contact [Zani] to provide refill reminders or information about treatment alternatives or other health related benefits and services that may be of interest." Special App. at 4.

On October 24, 2013, Zani received a flu shot from the same Rite Aid pharmacy. On September 26, 2014, Zani received a phone call, placed by a vendor hired by Rite Aid, with a prerecorded message informing him of the availability of flu shots for the upcoming flu season at Rite Aid pharmacies. The call stated:

> Get your flu shot at Rite Aid today and shield yourself from this season's strains of the flu. Rite Aid now offers patients sixty five and over the Fluzone High Dose vaccine designed for older patients and covered by Medicare Part B. Because our immune systems may need more help as we get older, the Fluzone High Dose vaccine available at Rite Aid may deliver a stronger immune response. Come in today and shield yourself. No appointment necessary and most insurance plans accepted. Vaccines available while supplies last. See your Rite Aid pharmacist for details. Goodbye.

App. at 221.

On December 23, 2014, Zani filed a complaint, on behalf of himself and others similarly situated, against Rite Aid alleging violations of the TCPA based on the 2014 phone call. Rite Aid moved for summary judgment, arguing that Rite Aid conveyed a "'health care' message," which can be lawfully sent to all who have given "prior express consent." 47 C.F.R. § 64.1200(a)(2). The district court granted Rite Aid's motion for summary judgment. *Zani v. Rite Aid Hdqtrs. Corp.*, 246 F. Supp. 3d 835, 839 (S.D.N.Y. 2017). After the entry of judgment, this appeal followed.

Under the TCPA, it is unlawful for "any person within the United States" to, *inter alia*, "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or . . . artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(A)(iii). The TCPA delegated the authority to implement these requirements to the Federal Communications Commission (the "FCC"). *See* 47 U.S.C. § 227(b)(2). Pursuant to its authority under the TCPA, in 2012, the FCC promulgated regulations that required "prior express written consent," for all calls that included "advertisements or telemarketing messages." 47 C.F.R. § 64.1200(a)(2), (f)(8). The FCC created an exemption from the prior express written consent requirement for a "'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule." 47 C.F.R. § 64.1200(a)(2) (quoting 45

4

C.F.R. 160.103).  Under this exemption, the entity placing the call must have "the prior express consent of the called party when the call . . . delivers a health care message."  45 C.F.R. § 64.1200(a)(2) (internal quotation marks omitted).  In other words, automated telephone calls (with certain exceptions) require "prior express written consent," but automated health care calls require only "prior express consent," that is, the prior consent need not be in writing or subject to specific disclosures.

Both parties agree that Zani gave Rite Aid prior express consent when he provided his cell phone number in connection with a flu shot received in a prior year.  *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given . . . .").  Zani contends, however, that because the call in question did not convey a health care message, express written consent was required, and he had not provided it.

The issues presented in this appeal are virtually identical to those that this Court recently addressed in *Latner v. Mount Sinai Health System, Inc.*, 879 F.3d 52 (2d Cir. 2018).  There, we held that the defendant, a New York-based hospital, did not violate the TCPA by sending, through a hired third-party, text messages reminding customers to get a flu shot.  The text message read:  "Its [sic] flu season again.  Your PCP at WPMG is thinking of you!  Please call us . . . to schedule an appointment for a flu shot."  *Id.* at

5

54. As relevant to this appeal, in *Latner*, we held the following: (1) "[t]he FCC exempts from [express] *written* consent calls to wireless cell numbers if the call delivers a health care message made by, or on behalf of, a covered entity or its business associate, as those are defined in the HIPAA Privacy Rule," *id.* at 54-55 (quoting 47 C.F.R. § 64.1200(a)(2)) (internal quotation marks omitted*)*; (2) the district court "(correctly) determined that the text message 'delivered a health care message made by, or on behalf of, a covered entity or its business associate,'" *id.* at 55 (brackets omitted); and (3) by providing his cell phone number when he first visited the pharmacy and signing a consent form acknowledging receipt of various privacy notices, "Latner provided his prior express consent to receiving a single text message about a health-related benefit that might have been of interest to him." *Id.*(internal brackets and internal quotation marks omitted).

       As in *Latner*, we hold that Rite Aid's cell phone message was a "health care" message exempt from the written consent requirement of the TCPA. We further hold that Zani provided "prior express consent" when he provided his cell phone number to the Rite Aid pharmacy and signed the privacy notice consenting to receiving messages.[1]

---

[1] In light of this disposition, we need not decide whether Zani's signing of the privacy notice constituted sufficient "prior express written consent."

Zani attempts to distinguish *Latner* by arguing, *inter alia*, that there both parties agreed the text message was a "health care message." Even if this were the case, and it is not obvious that it is, this Court was clear that the text message in *Latner* did, in fact, deliver a health care message. *Latner*, 879 F.3d at 55. There may well be messages that, though purportedly delivering a health care message, are so laden with marketing material as to raise a factual issue as to whether they fall outside the health care exemption. But the text of Rite Aid's message here, which is not substantially different from the message in *Latner*, raises no such concerns and comes within the exemption as a matter of law. Zani also argues that *Latner* can be distinguished because the call in this case had a marketing purpose, which Zani contends was absent in *Latner*. Even assuming there was a marketing purpose to the call here, however, the health care exemption excepts these messages from the normal requirements imposed on telemarketing messages. *See Jackson v. Safeway, Inc.*, No. 15-cv-04419-JSC, 2016 WL 5907917, at *9 (N.D. Cal. Oct. 11, 2016) ("[I]t would have been odd for the FCC to create an *exception* to the general rule only for calls that contain no advertising or telemarketing, given that the *general rule* itself only applies to a call that 'includes or introduces an advertisement or constitutes telemarketing.'" (citation omitted)).

Finally, Zani relies on the FCC's decision in *Kohll's Pharmacy and Homecare, Inc.*, 31 FCC Rcd. 13289, 13292-93 ¶ 8-10 (Dec. 21, 2016), which held that there was no health care exemption for faxes alerting corporations to the availability of flu shots.

7

While there is no health care exemption for faxes in the FCC regulations, there is such an exemption for cell phone calls in the regulations. Hence, Zani's reliance on *Kohll's* is misplaced.

***

We have considered Zani's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

8

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit